IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN BERG,<br><br>*Petitioner*,<br><br>v.<br><br>DELAWARE COUNTY PROBATION DEPARTMENT,<br><br>*Respondent*. | Civil Action<br><br>No. 19-cv-1275 |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                 December 14, 2022

Petitioner John Berg seeks relief under 28 U.S.C. § 2254 terminating his registered sex offender status stemming from a guilty plea in the Court of Common Pleas of Delaware County, Pennsylvania. Berg contends his guilty plea violated his Sixth Amendment right to effective assistance of counsel. For the reasons set forth below, I will deny the petition.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Criminal Conduct

Berg's criminal charges resulted from an encounter between Berg and the victim, Rose Sabatino, on June 8, 2016. An Affidavit of Probable Cause containing a summary of an interview with Sabatino stated, in relevant part:

> Sabatino . . . arrived at [Berg's house] . . . for a scheduled interview with [Berg] . . . . [Berg] . . . [led] [Sabatino] into a mud room area      After entering the mud room, . . . [Berg] . . . placed both his hands on [Sabatino's] shoulders and turned her towards him. [Berg] pushed her body towards his and began to fondle [Sabatino's] breast over her shirt. [Berg] then began to fondle the victim's genital area over her pants.     [Berg] took the victim's right hand and forced it onto the outside of his genital area . . . .

1

Sabatino testified to these events at a preliminary hearing, where she said that Berg "took [her] and then he proceeded to push [her] body against his with force," and "both his arms pulled [her] close to him tight." (Preliminary Hearing Tr. 11.) Sabatino testified that Berg "held [her] against him tight" and "pulled" her "[v]ery tight" as she was "trying to get away" and telling Berg she had to leave. (Id. at 12-13.) Sabatino also said she was "pushing away from him." (Id. at 14.)

### B. The Criminal Proceedings

Berg was initially charged with indecent assault without consent, indecent assault by forcible compulsion, unlawful restraint causing serious bodily injury, and false imprisonment. He was represented in these proceedings by attorney Arik Benari.

On October 25, 2017, Berg pled guilty to only the least serious of these charges—indecent assault without consent—and the other charges were dismissed. Benari stipulated to the Affidavit of Probable Cause as providing the factual basis for the plea. (Guilty Plea Tr. 14.) Berg signed and initialed paragraphs of a "Guilty Plea Statement," and affirmed in the plea colloquy that he read and reviewed each paragraph in the statement. (Id. at 11.) Five of those paragraphs stated:

> 3. I have fully discussed this case with my lawyer, including the facts and possible defenses I may have to these charges such as, but not limited to: [various defenses].
>
> 4. I am fully satisfied with what my lawyer has done for me in the past and what my lawyer is doing for me today concerning this case.
>
> 5. I am fully satisfied that my lawyer is ready and able to defend me in this case if I do not plead guilty or nolo contendere to these charges.
>
> …
>
> 28. I have not been pressured, forced or threatened in any way by anyone to plead guilty or nolo contendere to these charges, and I have not been promised anything by anyone in return for pleading guilty or nolo contendere other than the plea agreement, if any, which has been presented to the judge.
>
> 29. I have had enough time to fully discuss my case and my decision to plead guilty or nolo contendere and everything contained in this Guilty Plea

> Statement with my lawyer and by placing my initials on all of the lines provided and signing below, I am saying that I understand, agree with, and answered truthfully everything contained in this Guilty Plea Statement.

Berg was sentenced to 18 months of probation and 15 years of sex-offender registration. (Guilty Plea Transcript 17-18.) Berg did not file a direct appeal.

### C. PCRA Petition

On October 1, 2018, Berg filed a petition in the Court of Common Pleas pursuant to Pennsylvania's Post-Conviction Relief Act (PCRA). Berg argued to the PCRA Court that his Sixth Amendment right to effective assistance of counsel was violated because Benari did not prepare to call witnesses to testify that Berg's heart condition rendered him medically incapable of performing the acts described in Sabatino's preliminary hearing testimony.

The PCRA court denied Berg's petition without a hearing. The PCRA Court initially concluded that Berg's plea was "knowingly, voluntarily, and intelligently given" based on the guilty plea colloquy. (PCRA Opinion, July 12, 2019, at 2.) The court then applied a standard that a knowing, voluntary, and intelligent plea could only be set aside if it was given "due to incomplete or misinformation from his counsel while in the process of pleading." (Id. at 3.) In applying that standard, the PCRA Court decided that Berg's statements under oath when pleading guilty "[could] not be retracted" and that Berg "was fully aware of the gravity of the situation." (Id. at 3-4.) The court also noted that Berg had an opportunity to, but did not, "speak to the performance of his counsel" during the guilty plea colloquy or "make known any outstanding issues that he may have had at the time." (Id. at 4.) "Importantly, paragraphs 3, 4, and 5 of the Guilty Plea Statement asked Defendant to affirm his satisfaction with his lawyer's representation in the case, as well as to confirm his lawyer's ability to readily and ably defend him in trial were he not to plead guilty." (Id. at

3

5.)

With respect to Berg's argument that Benari did not adequately prepare, the PCRA Court found: "This is not true, as Defendant indicated by initialing paragraphs 3, 4, and 5 of the signed and dated Guilty Plea Statement, as well as paragraphs 28 and 29."

The PCRA Court also denied Berg's request for an evidentiary hearing "during which he would have presented witnesses to testify about his physical incapability to meet the force requirements necessary to be charged with indecent assault via forcible compulsion." (PCRA Opinion at 6.) The PCRA Court determined that evidence developed at a hearing would only be relevant if it could show a " 'causal nexus' between prior counsel's incomplete or misinformation and Defendant's voluntary plea." (Id.) And "[Berg]'s Doctors and families will not be able to speak to whether or not his guilty plea was the result of incomplete or incorrect information from his prior counsel." (Id.) The PCRA Court also observed that "[a] hearing would be pointless, seeing as [the witnesses] would be testifying about the likelihood of a charge [presumably, indecent assault by forcible compulsion] that was ultimately dropped from the finalized guilty plea." (Id.)

Berg appealed to the Superior Court, which dismissed the appeal for lack of jurisdiction because Berg's term of probation had ended.

### D. Federal Habeas Corpus Petition

On March 27, 2019, Berg filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254, again asserting that Benari was ineffective for failing to prepare for trial. Berg also requested a hearing to develop facts related to Benari's alleged ineffectiveness.

In a June 2, 2021, report and recommendation, Magistrate Judge Carol Sandra Moore Wells recommended that Berg's petition be denied without a hearing. Judge Wells reasoned that the

PCRA Court's finding that Berg's proposed medical testimony was only relevant to the dismissed forcible compulsion charge was a state-law determination binding on a federal habeas court. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). Thus, taking as true that the evidence was irrelevant, Judge Wells found that the PCRA Court's conclusion that Benari was not ineffective for failing to investigate that evidence was reasonable. See 28 U.S.C. § 2254(d).

Berg filed a timely objection to Judge Wells' recommendation. On April 13, 2022, I held an evidentiary hearing on Berg's petition.[1]

## II. SUMMARY OF THE EVIDENTIARY HEARING

### A. Kelly Spratt

Dr. Kelly Spratt, who had been Berg's treating physician since 2010, testified for Berg. Respondent stipulated to Spratt's qualifications as an expert in cardiology. Spratt explained that Berg has an "aortic dissection," which is a condition, usually life-threatening, in which the aorta has a sudden tear. Berg had his aortic dissection repaired through surgery. (N.T.[2] 10-13.)

According to Spratt, the surgery left Berg with a weak leg, difficulty ambulating, and lack of balance. Spratt believed that in 2016 (when the alleged crime occurred), Berg would not have been able to do anything "strenuous" and would have had "a difficult time even just walking short distances because of the balance issue and also because of the pain issue in the leg." Berg was restricted from lifting more than 40 pounds to prevent his aorta from tearing again. (N.T. 13-15.)

In Spratt's opinion, Berg was not capable of having a struggle with a grown adult for ten

---

[1] Both parties consented to the hearing being conducted by videoconference. A summary of the hearing testimony is as follows.

[2] Citations to "N.T." refer to the evidentiary hearing transcript in this case.

minutes because he was too "unsteady." Spratt also believed that a "struggle" could require as much force as lifting 40 pounds, which was neither "advisable" nor "possible" for Berg. More specifically, Spratt testified that Berg could not: (1) "place both of his hands on a resisting adult and pull her tightly towards him"; (2) "forc[e] that struggling or resisting adult's hand onto his genitals"; or (3) "plac[e] both hands on a resisting adult's shoulder, pull[] that person tightly towards him and plac[e] his hands on that person's . . . breast area[.]" (N.T. 15-17.) But Spratt "[couldn't] say" whether Berg would have been able to simply "touch a woman's breasts or touch her genital area without her consent" in the absence of a struggle. (N.T. 20.)

Spratt testified that she would have been willing to testify in Berg's defense, but Benari never contacted her. (N.T. 18-19.)

### B. Arik Benari

Arik Benari, Berg's trial counsel, recalled meeting Berg in person and discussing the facts of his case "multiple times leading up to trial." (N.T. 25-26.) Benari testified that he and Berg discussed Berg's "health issues" and Berg's inability to "fight back" if someone "shoved him." Benari did not recall exactly what Berg's health issues were, but believed they involved "weakness and inability to engage in a struggle." Benari initially testified that Berg did not "suggest that [he] contact any of [Berg's] physicians," but after being shown emails between himself and Berg (discussed below), Benari admitted that "[w]e were discussing the potential of calling" Dr. Desai and he did not "remember whether [he] spoke to the doctor directly or not." (N.T. 28-34.) Benari explained that his ultimate decision not to call Dr. Desai as a witness was due to his determination that the testimony could "backfire":

> [T]here was a big concern over whether that potential part of the defense would backfire .........If the jury believe[d] that [Berg was] trying to say that [he was]

6

> too weak to . . . put [his] hand on somebody, this could backfire hard, rather than focusing on [Berg's] credibility as a businessman in the community and an upstanding member of the community and your character and that you would never do this and you didn't do this and your wife was up at the top of the stairs.

(N.T. 30.) In Benari's view, the medical testimony was not foolproof:

> [T]he concern was that if we were focusing on [Berg's] health where he's able to clearly walk around and, you know, walk into the courtroom and stand up and sit down and the idea that we're using a medical excuse, for lack of a better term, to say that he couldn't reach forward with his hands to touch somebody . . . .
>
> …
>
> And if we're trying to get a jury instead of just saying this didn't happen to try and say I was too weak to reach my hand forward, if they didn't believe that, they might not believe anything else in our testimony.

(N.T. 31.)

Benari characterized the decision not to call the doctors as having been made "between the two of us" and being "some kind of agreement." (N.T. 30, 34.) Benari stated that he made that judgment call by speaking to Berg, not Berg's doctors. Benari also testified that Berg himself "wanted to testify to [his own health] issues." (N.T. 29-30.)

Benari believed he was prepared for trial. He said he did not remember exactly what his defense strategy was, but believed it was "to cross-examine the witnesses and convince the jury that they're not credible and put forth the testimony from Mr. Berg and his wife and Kelly [a different Kelly, not Dr. Spratt] and any other witnesses we have lined up." (N.T. 42.)

According to Benari, "Berg's concern throughout this entire issue was keep me out of jail at all cost; I can't go to prison. And that was the point of every conversation we've had." On the day of trial, Berg "brought up again I need you to guarantee me that I won't go to jail. And I explained to him that if he is found guilty of either charge that there is the potential for jail time, because statutorily there is." (N.T. 30-31.) Berg "yell[ed]" at him to make sure he did not go to

jail. For that reason, Benari "entered into last-minute negotiations" with the prosecutor to avoid jail time. These occurred "30 minutes" before jury selection. (N.T. 42-43.)

### C. John Berg

Berg also testified at the evidentiary hearing and stated that Benari was "never available" and he was able to meet with Benari "not more than twice" before trial. (N.T. 52.)

Berg stated that he informed Benari of the facts Berg wanted to use in his defense: (1) that he was medically incapable of struggling with Sabatino, and (2) that his wife would have heard any altercation. Berg described his medical issues and "pleaded" with Benari to contact Berg's physicians, and, in particular, asked Berg to contact Dr. Desai, who Berg described as "world renowned" and "very much sought after." Berg did not recall whether he asked Benari to contact Dr. Spratt. (N.T. 52-55.)

Berg denied agreeing not to call Dr. Desai as a witness and described Benari's testimony to that effect as an "[a]bsolute lie." (N.T. 56.) Berg thought Benari's trial strategy of solely cross-examining Sabatino was a "horrible idea." (N.T. 64.)

According to Berg, he believed until the day of jury selection that he would be going to trial, not pleading guilty. But he had "no idea" what Benari's strategy was. Had Benari prepared to call Dr. Desai as a witness, Berg said he would not have pled guilty. (NT. 63-66.) When asked why he did not object to Benari stipulating to the facts in the Affidavit of Probable Cause, Berg explained that, had he objected to pleading guilty, he would have been left facing trial without a lawyer who was prepared. (N.T. 79.)

### D. Berg-Benari Emails

Berg presented several emails between himself and Benari as exhibits at the evidentiary hearing, which were admitted by stipulation. (N.T. 80-81.) No witness clarified whether these exhibits covered all relevant emails between Berg and Benari.

On January 11, 2017, Berg sent an email to Benari stating:

> I am seeing my cardio-vascular surgeon on January 28. I need to know if you intend to call on him for testimony. . . .
>
> . . . I need to know what, if anything, to say to the surgeon. Perhaps you and I should talk? I think his testimony would be valuable but you're the quarterback.

(Berg Ex. D-4.) In another email that same day, Berg wrote:

> . . . I was unable to obtain an appointment with Dr. Desai, the cardio-vascular man, so that's one reason why you were unable to move the Court to take his deposition, etc. As I said previously, he's seeing me on 1/26.
>
> You and I can discuss the tactics of this matter at tomorrow's meeting.

(Berg Ex. D-4.) In an email sent two weeks later, Berg described a conversation with another doctor:

> I spoke with Dr. Nemish today and asked him four questions:
>
> Q: could John Berg forcibly restrain a resisting female of average height and weight for ten minutes against her will?
>
> A: No, he could not keep his balance against another adult pushing and shoving and squirming.
>
> Q: Have you fully informed Mr. Berg of his medical conditions which survived his surgery and persist until today?
>
> A: Yes
>
> Q: Do you believe Mr. Berg understands the implications of his condition?
>
> A: Yes
>
> Q: Would Mr. Berg be reasonable to fear a fatal medical event if he engaged in a physical altercation with another adult?
>
> A: Yes.
>
> Either the event happened without resistance (as testified by Witness) in which case it was consensual; or

9

>   It never happened.

(Berg Ex. D-5.)

On February 6, 2017, Berg asked Benari, "Please . . . also, what about Dr. Desai???" (Berg Ex. D-6.) Benari wrote back: "I'll call you to discuss the doc's opinion . . . ." (Berg Ex. D-5.) But then on February 11, 2017, Berg told Benari, "We were supposed to talk yesterday about the surgeon's testimony." (Berg Ex. D-6.)

On March 11, 2017, Berg sent an email stating:

>   I'm getting nervous. Desai's schedule is very tight and his testimony might prove to be conclusive in my favor.
>   We now have only 11 weeks until trial. Also, are you going to visit with the Investigator? Are we going to get a PI involved?
>   I am getting close to trial and we haven't done anything defensive yet and we are quickly running out of time.

(Berg Ex. D-7.)

No further emails were offered until October 25, 2017 (the same day Berg pled guilty), at which time Berg wrote to Benari's co-counsel "Julia" about an issue with Sabatino's story, but did not mention Dr. Desai or any other doctors. (Berg Ex. D-8.)

### III. DISCUSSION

#### A. "In Custody"

As Berg was sentenced to probation, he was never incarcerated. Berg's probation was no longer in effect when he filed his federal habeas petition. As such, I must initially determine whether I have jurisdiction to hear Berg's petition. "A federal court has jurisdiction to entertain a petition for a writ of habeas corpus under § 2254 only if the petitioner was 'in custody pursuant to the judgment of a State court' when the petition was filed." Piasecki v. Ct. of Common Pleas of Bucks County, Pa., 917 F.3d 161, 165-66 (3d Cir. 2019). A person subject to Pennsylvania's sex

10

offender registration statute pursuant to a judgment of conviction in a Pennsylvania court satisfies this requirement. Id. at 163. I therefore have jurisdiction to consider Berg's petition.

### B. Exhaustion

"A federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has 'exhausted the remedies available in the courts of the State.' To do so, a petitioner must fairly present all federal claims to the highest state court before bringing them in federal court." Leyva v. Williams, 504 F.3d 357, 365 (3d Cir. 2007) (quotation marks and citations omitted) (citing 28 U.S.C. § 2254(b)(1)(A)).

Berg has done so here. He obtained a decision on his ineffectiveness claim by filing a timely PCRA petition. He is unable to appeal that decision in state court because, as the Superior Court held, he is no longer considered "in custody" for purposes of the PCRA (although he is "in custody" for federal purposes). Berg has therefore exhausted all available avenues of relief in state court.

### C. Procedural Default

A petition has no remedy under § 2254 if the petitioner's procedural default in state court provides an adequate and independent ground for upholding the state court's decision. Coleman v. Thompson, 501 U.S. 722, 731 (1991). Respondent argues that Berg defaulted his ineffective assistance claim when the Pennsylvania Superior Court dismissed his appeal from the denial of his PCRA petition, because Berg was by then no longer on probation, depriving the PCRA Court of jurisdiction.

The Third Circuit has rejected Respondent's argument. Lack of PCRA jurisdiction is not a procedural default, as it does not result from any failure on the petitioner's part. Leyva, 504 F.3d

11

at 369.

Respondent nonetheless argues that the expiration of Berg's probation should be considered a procedural default because Berg could have prosecuted his ineffective assistance claim on direct review. But even though Pennsylvania courts do, in "extraordinary circumstances," allow some ineffectiveness claims to be litigated on direct review, that does not change the fact that Pennsylvania courts do not consider such claims to be defaulted if they are raised for the first time on PCRA review. Commonwealth v. Holmes, 79 A.3d 562, 563 (Pa. 2013); Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002). Whether the claim is procedurally defaulted is a question of state law, and I must therefore accept the determination of the Pennsylvania Supreme Court that ineffectiveness claims raised for the first time on PCRA review are not defaulted. See Coleman, 501 U.S. at 729-30 (procedural default is an application of the "independent and adequate state ground doctrine").

Finally, Respondent notes that the Pennsylvania Supreme Court has ruled that the possible loss of an opportunity to collaterally challenge a conviction due to the expiration of custody does not violate due process. But Berg is not claiming that the procedures available to him violated due process, only that he used those procedures correctly, which he did.

For these reasons, Berg's ineffectiveness claim is not procedurally defaulted.

### D.  § 2254(d) Deference

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) commands federal courts to afford substantial deference to the decisions of state courts. See Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000). Because Berg's ineffectiveness claim was adjudicated on the merits in the PCRA Court, he is not entitled to federal habeas relief unless the PCRA Court's decision: (1)

"was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d).

Judge Wells interpreted the PCRA Court's opinion as deciding that Benari was not ineffective by failing to pursue medical testimony because force was not an element of the one charge to which Berg pled guilty—indecent assault without consent. Another possible reading of the PCRA Court's opinion is that it applied a rule that Berg could only show ineffectiveness if Benari provided him with "incomplete or misinformation" about his plea. (See PCRA Opinion at 3.) The United States Supreme Court has "rejected the argument . . . that a knowing and voluntary plea supersedes errors by defense counsel." Missouri v. Frye, 566 U.S. 134, 141 (2012). In particular, a defendant who pleads guilty may show a violation of the Sixth Amendment right to effective assistance of counsel based on counsel's "failure to investigate or discover potentially exculpatory evidence." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If the PCRA Court did not "apply Strickland to assess [Berg's] ineffective-assistance-of-counsel claim . . . , [its] adjudication was contrary to clearly established federal law." Lafler v. Cooper, 566 U.S. 156, 173 (2012).

There is also some ambiguity as to how the PCRA Court dealt with Berg's argument that medical testimony could have impeached Sabatino's credibility. The PCRA Court made two observations: (1) "[Berg]'s Doctors and families will not be able to speak to whether or not his guilty plea was the result of incomplete or incorrect information"; and (2) "[the witnesses] would be testifying about the likelihood of a charge that was ultimately dropped from the finalized guilty plea." (PCRA Opinion at 6.) The first statement, if used as a ground for rejecting Berg's petition, could be contrary to Strickland as it would foreclose Berg from showing ineffectiveness through

13

lack of preparation. See Hill v. Lockhart, 474 U.S. 52, 59 (1985) (counsel can be ineffective by failing to "investigate or discover potentially exculpatory evidence"). As to the second observation, it is unclear whether the PCRA Court believed that testimony impeaching the credibility of the prosecution's sole witness was actually irrelevant or whether it simply applied a per se rule that ineffectiveness could only be predicated on incomplete or misinformation.

The PCRA Court also appeared to foreclose Berg from disavowing statements in his guilty plea colloquy expressing satisfaction with Benari, regardless of contrary evidence offered on collateral review. Statements under oath in a guilty plea "carry a strong presumption of verity" but are not invariably irrebuttable. Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). If the PCRA Court applied a per se bar on Berg attempting to show that his prior satisfaction with Benari was mistaken, that decision would be contrary to clearly established federal law. See Lesko v. Lehman, 925 F.2d 1527, 1538-39 (3d Cir. 1991) (applying Blackledge in a § 2254 proceeding).

Federal habeas courts must give "state-court decisions . . . the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam). The decision must be upheld so long as "fairminded jurists could disagree" as to its correctness. Harrington v. Richter, 562 U.S. 86, 101 (2011). However, for the reasons that follow, I need not decide whether the PCRA Court's opinion may fairly be read as complying with Strickland, because Berg is not entitled to relief in either event.

### E.  § 2254(e)(2) Limitation on Holding a Hearing

Although I held an evidentiary hearing on the merits of Berg's Strickland claim, I may not consider evidence adduced at the hearing if 28 U.S.C. § 2254(e)(2) applies. See Shinn v. Ramirez, 142 S. Ct. 1718, 1738 (2022). AEDPA prohibits a habeas court from considering evidence beyond

14

the state-court record if the petitioner "failed to develop the factual basis of [the] claim in State court proceedings." 28 U.S.C. § 2254(e)(2). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000).

Berg sought a hearing on his ineffectiveness claim in the PCRA Court, which was the proper forum to develop those facts. The PCRA court denied a hearing. Berg was therefore diligent in attempting to develop the facts underlying his Strickland claim, and the bar of § 2254(e)(2) does not apply. I will therefore consider the evidence developed at the evidentiary hearing.

### F. Ineffective Assistance of Counsel

Finally, to be entitled to relief, Berg must show that he was deprived of the effective assistance of counsel. To make out such a claim, Berg must show that Benari's "performance was deficient" and that Benari's deficient performance caused prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). I find it necessary to analyze only whether Benari's performance was deficient. I conduct this review de novo based on the state court record and the testimony adduced at the evidentiary hearing. See Bronshtein v. Horn, 404 F.3d 700, 724 (3d Cir. 2005).

Defense counsel's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "[T]he proper standard for attorney performance is that of reasonably effective assistance." Id. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. The defendant must rebut

15

the presumption that counsel's conduct "might be considered sound trial strategy." Id.

The Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). "Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." Padilla v. Kentucky, 559 U.S. 356, 364 (2010) (quotation marks omitted). That includes counsel's duty to "investigate or discover potentially exculpatory evidence." Hill, 474 U.S. at 59.

In this case, Berg challenges Benari's failure to prepare witnesses to testify in his defense, in particular by failing to contact doctors who could have testified that Berg was medically unable to engage in the conduct recounted at the preliminary hearing. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Thus, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.

Berg does not argue that Benari was unaware of the possibility of offering testimony on Berg's medical condition. In fact, Berg claims to have described this possible testimony to Benari, and faults Benari for not adopting it as his defense strategy. (See N.T. 52-54.) Benari agreed that he did not prepare to call witnesses to testify in Berg's defense. (N.T. 30-34.) In Benari's view, this decision was based on the risk that medical testimony could "backfire." (N.T. 30-31.) The jury would see Berg in the courtroom, see that he was able to move around, and could disbelieve that Berg was medically unable to "reach forward with his hands to touch somebody." (N.T. 30-31.)

Benari's testimony that he made a strategic decision not to call medical witnesses was reasonable. While it is possible to read the preliminary hearing transcript as describing a rough encounter at odds with Berg's frail condition, it is also possible to read it as describing contact

16

that was nonconsensual but only minimally forceful. While the jury might have accepted Berg's characterization, as Benari stated, asking them to do so carried risks. It was not plainly deficient for Benari to conclude that relying on Berg's alleged frailty risked damage to Berg's credibility before the jury.

Furthermore, although Benari did not personally speak with Berg's doctors, Benari was aware of the testimony those witnesses could give based on Berg's statements. Berg's emails to Benari are consistent with this conclusion, as they show Berg informing Benari about his doctors and Benari, over Berg's objection, opting not to call them. Thus, Benari's decision not to present medical testimony, right or wrong, was an informed one. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" Strickland, 466 U.S. at 690. While I credit Berg's testimony that he disagreed with Benari's decision, matters of strategy, including "what witnesses to call," are typically the domain of the lawyer rather than the client, provided the lawyer has engaged in "consultation with the client where feasible and appropriate," as Benari did here. See ABA Standards for the Defense Function § 4-5.2(d).

I also credit Benari's testimony that Berg told Benari to "keep [him] out of jail at all cost." (N.T. 30.) "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Strickland, 466 U.S. at 691. Benari's assessment that a trial entailed a risk of conviction on the most serious charge of indecent assault by forcible compulsion was not plainly deficient. A jury might have believed Sabatino even after hearing from Berg's doctors. And thus Benari reasonably concluded that the only way to guarantee Berg's liberty was for Berg to plead guilty to the least serious charge.

For these reasons, I conclude that Benari's performance was "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Accordingly, Berg is not entitled

to habeas corpus relief.

## IV. CONCLUSION

For the reasons set out above, I will deny Berg's petition for a writ of habeas corpus.

An appropriate order follows.